**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

PANKAJ T. DESAI,

        Plaintiff,

v.                                              Case No. 5:12-cv-495-Oc-34PRL

WILLIAM O. FARMER, JR., as the
Sheriff of Sumter County, Florida, et al.,

        Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Exclude Expert Testimony of Diop Kamau and Memorandum of Law (Doc. No. 34; Motion) filed March 3, 2014. In response to the Motion, on March 17, 2014, Plaintiff filed his Response in Opposition to Defendants' Motion to Exclude Expert Testimony of Diop Kamau and Memorandum of Law (Doc. No. 39; Opposition). The Motion is ripe for the Court's consideration.

In this action, Plaintiff Pankaj Desai (Desai) seeks damages for injuries he allegedly sustained when Defendant Deputy Michael Cassidy (Cassidy) slammed a door on his hand, and Defendant Deputy Michael Bishop (Bishop) failed to intervene on Desai's behalf. See generally First Amended Complaint (Doc. No. 29; Complaint). In the Complaint, Desai asserts claims of: battery against Cassidy and Defendant Sheriff William O. Farmer (Farmer), negligence against Cassidy, negligent training against Farmer, excessive use of force in violation of 42 U.S.C. § 1983 against Cassidy, and a failure to intervene against

Bishop. See id.  Along with the instant Motion, Defendants filed a motion seeking the entry of summary judgment against Desai on all the claims against them.  See Defendants' Motion for Summary Judgment and Memorandum of Law (Doc. No. 35).  The Court will address the summary judgment motion in a separate order.

In the instant Motion, Defendants ask the Court to exclude the opinion testimony of Desai's proposed expert Diop Kamau (Kamau).  See generally Motion.  Desai identifies Kamau as an expert in police practices who offers opinions regarding the propriety of the alleged use of force, the necessity of documenting the incident, and the failure to adequately investigate the incident.  See Exhibit 1 to Motion, Expert Witness Report and Opinion (Doc. No. 34-1; Kamau Report); see also Exhibit 2 to Motion, Deposition of Diop Kamau (Doc. No. 34-2; Kamau Dep.) at 53-54 (responding affirmatively that his testimony and opinions are limited to three areas: policies relating to use of force, policies concerning police report writing, and policies relating to citizen complaint investigations).  Specifically, it appears that Desai intends for Kamau to offer the following opinions:  (1) "that the force used against Dr. Desai by [D]etective Cassidy was not justified under accepted law enforcement standards and police practices," (2) that the use of force in this case was not "allowed within the scope of a law enforcement officer's authority," or, stated differently "that [D]eputy Cassidy was not entitled to use force against Dr. Pankaj Desai" and (3) "that the Sumter County Sheriff's office departed from standards consistent throughout law enforcement for the investigation of a police misconduct complaint."  Kamau Report at 5,

7.[1] Defendants appear to question Kamau's qualifications to render opinions, specifically that all of Kamau's opinions should be excluded because they do not meet the relevancy requirements of Rule 702 of the Federal Rules of Evidence (Rule(s)), and also argue that his opinion regarding the propriety of the use of force is as unreliable as it is irrelevant. See Motion at 4.

**I.     Standard of Review**

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as gatekeeper, to ensure that any and all scientific testimony or evidence[2] admitted is not only relevant, but reliable. To determine the admissibility of expert testimony, a trial court must

---

[1] At the conclusion of the Kamau Report, he states, "After reviewing the aforementioned records, court testimony, law enforcement policies and witness statements I am prepared to render a professional opinion. It is my professional opinion based on my training and experience as a police officer that probable cause did not exist to make a subject stop, search, and arrest." Kamau Report at 7. These last two sentences do not appear to apply to this case but instead may have been included in error from a previous report. There was no court testimony for Kamau to review and no stop, search, or arrest for Kamau to give his opinion regarding the existence of probable cause to do so. Accordingly, the Court will not evaluate the admissibility of this opinion further.

[2] Although the expert testimony at issue in Daubert was scientific, the Supreme Court held in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 147-48 (1999) that the Daubert analysis and a trial judge's role as gatekeeper "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge."

consider if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548 (11th Cir. 1998)). The "burden of establishing qualification, reliability and helpfulness" lies with the party offering the expert opinion. See McClain v. Metabolife Int'l, Inc. 401 F.3d 1233, 1238 (11th Cir. 2005) (quoting Frazier, 387 F.3d at 1260). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Feliciano v. City of Miami Beach, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) (internal quotation omitted).

For the purpose of conducting the reliability inquiry mandated by Daubert, the Supreme Court has suggested that a trial court consider a number of factors, which include: (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has attained general acceptance in the relevant scientific community. See Daubert, 509 U.S. at 593-94. These factors are not exhaustive, and the Eleventh Circuit Court of Appeals has also considered whether an expert has relied on anecdotal evidence, such as case reports; temporal proximity; and improper extrapolation. See Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir.

1999).  The Court's inquiry under Rule 702 must focus on the methodology, not the conclusions, but the Court is not required to admit opinion testimony only connected to existing data by an expert's unsupported assertion.  See Daubert, 509 U.S. at 595; Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

In addition to determining the reliability of the proposed testimony, Daubert instructs that Rule 702 requires the Court to determine whether the evidence or testimony assists the trier of fact in understanding the evidence or determining a fact in issue.  See Daubert 509 U.S. at 591.  This consideration focuses on the relevance of the proffered expert testimony or evidence.  The Court explained that to satisfy this relevance requirement, the expert testimony must be "relevant to the task at hand."  Daubert, 509 U.S. at 591. Because scientific testimony does not assist the trier of fact unless it has a justified scientific relation to the facts, the Eleventh Circuit has opined that "there is no fit where a large analytical leap must be made between the facts and the opinion."  McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004).  An expert must know "facts which enable him to express a reasonably accurate conclusion instead of mere conjecture or speculation," see Jones v. Otis Elevator Co., 861 F.2d 655, 662 (11th Cir. 1988), and an expert's assurances that he has used generally accepted scientific methodology are insufficient, see McClain, 401 F.3d at 1244.  Further, to assist the trier of fact, expert testimony must concern "matters that are beyond the understanding of the average lay person . . . expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (internal citations omitted).

**II.     Analysis**

Without explicitly challenging Kamau's qualifications, Defendants recite his purported qualifications with skepticism implicitly challenging his qualifications to express opinions in the area of police practices. See Motion at 6-7. Because the qualification of an expert is a threshold issue, the Court begins its analysis with consideration of Kamau's qualifications to express the opinions which Desai seeks to have him present to a jury.

Although the proffered testimony is non-scientific, the Court is obligated to evaluate the expert's qualifications as carefully as it would those of a scientist to ensure that in finding an expert qualified, the Court is not simply "taking the expert's word for it." Toscano v. Case, No. 11-4121 (FSH), 2013 WL 5333206, at *7 (D.N.J. Sept. 20, 2013) (quoting Rule 702's advisory committee's note (2000 amends.)). Moreover, the expert's area of expertise must include the specific subject matter about which he will testify. See id. (noting that a proffered expert who is a police officer is not necessarily qualified to opine on all law enforcement issues).

Kamau received his bachelor's degree in criminal justice in 1980, and after his initial police training, went to work as a deputy for the Ventura County Sheriff's Office in California for two years. Kamau Dep. at 14-17. He later transferred to the Hawthorne Police Department, and then to the Los Angeles County Sheriff's Major Crimes team, working in different positions from patrol officer to undercover officer until he left law enforcement in 1987. See id. at 14-19. Kamau then pursued a master's degree at Pennsylvania State University, and began working with various news organizations to investigate police corruption. See id. at 23. Between 1998 to 2004, he taught as an adjunct professor for

both Florida State University and Florida A&M University, although he does not remember what courses he taught beyond the fact that the courses at Florida A&M dealt with "police issues." See id. at 27-29. Beginning in 1994, Kamau developed an organization called Police Complaint Center—that has since been disbanded and replaced with his current web based company, Policeabuse.com—where he explains that he works with other investigators to assist victims of police abuse. See id. at 24-25; Kamau Report at 9.

In his Curriculum Vitae, Kamau boasts over twenty-five "years serving as a law enforcement expert witness pertaining to police officer standards [and] training practices with expertise in officer misconduct allegation review [and] analysis" and other areas not relevant here. See Kamau Report at 9. In his deposition, Kamau testified that he had testified as an expert twenty to twenty-five times in federal court. Kamau Dep. at 34. However, in his Report, he lists only five cases in which he has been retained as an expert in the last five years (without providing the case numbers, courts in which the cases were filed, or the years they were filed). See Kamau Report at 7. Kamau explained during his deposition that one of those five cases was in state court, and he has never actually testified in front of a federal judge or a jury in federal court, but instead has either testified at a deposition or the case settled after he submitted his report. See id. at 34-38. Therefore, these cited examples of previous expert testimony are of little assistance to the Court in evaluating Kamau's qualifications to offer opinion testimony in this case.

This year alone, Kamau purports to have investigated over 600 misconduct complaints, in addition to participating in undercover investigations to document racial profiling and other misconduct. See Kamau Report at 3. He describes his daily work as

"counseling, consulting, helping people find resources, assisting them in locating lawyers who can take their case, helping them negotiate or communicate with police departments." Kamau Dep. at 42.  Kamau has not published any materials outside of articles discussing police abuse which he has published on his website.  Kamau Dep. at 15, 43-44.  In his Affidavit in Support of Expert Witness Opinion (Doc. No. 39-1; Kamau Statement), Kamau explains that he has written editorials that have appeared in the Los Angeles Times and the New York Times.[3]  Id. at 15.  However, such editorials provide the Court with no means of evaluating Kamau's qualifications to opine on police misconduct.  Moreover, his practical experience, while involving police departments, is based on his long ago law enforcement training and experience in California.  Such experience is of little, if any, usefulness for offering opinions about the practices of a police department in Florida.  See United States v. Hirschberg, 988 F.2d 1509, 1513-14 (7th Cir. 1993) (finding that Illinois police detective could not opine as to practices of Miami police detective because the witness's testimony was not relevant and his opinion was not a reasoned decision drawn from "a special skill, knowledge or experience").

In his deposition testimony Kamau explained the process he followed in preparation of the Kamau Report in this case.  In addition to interviewing Desai, his son, and office employees, Kamau called the Sumter County Sheriff's Office, as well as the Florida

---

[3] Kamau expands on the Kamau Report and his credentials in an unsworn, notarized statement purporting to be an affidavit and, in doing so, responds to some of the arguments Defendants raise in their Motion.  See Kamau Statement.  Defendant has moved to strike the Kamau Statement pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  See Defendants' Motion to Strike Expert's Statement (Doc. 39-1) and Memorandum of Law (Doc. No. 41).  The Court has reviewed the Kamau Statement and finds that its contents do not affect the Court's resolution of the instant Motion.  Accordingly, the Motion to Strike will be denied as moot.

Department of Law Enforcement and the accreditation department to ask about the complaint process, and what obligation a department had to investigate complaints of misconduct. See Kamau Dep. at 50-51. He did not rely on any particular qualifications to make these inquiries. While Kamau certainly has a familiarity with investigating law enforcement, it is unclear how his experience renders him qualified to opine in this case. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994). While he repeatedly cites accolades which he may or may not have received,[4] as well as his experience investigating claims of police abuse nationwide, he fails to show that his experience is of the type that would be sufficient to qualify him as an expert in the specific area of police practices upon which he wishes to opine—the use of force and the accepted law enforcement standards in Florida. Accordingly, Desai, as the party offering the expert opinions, has failed to carry his burden of showing that Kamau is qualified. See McClain, 401 F.3d at 1238. On that basis, Kamau's opinions are due to be excluded, and the Motion is due to be granted.

Even if the Court were to assume arguendo that Kamau is qualified to render opinions in the area of police practices relevant to this case, the Court nevertheless would find his opinions to be inadmissible as he failed to utilize any reliable methodology. Indeed,

---

[4] In his Curriculum Vitae, Kamau states "I have been honored with (4) Emmy Awards and (4) Edward R. Murrow Awards for excellence in investigative journalism." Kamau Report at 9. In his deposition, he clarifies that he has not received any awards but he was the producer on stories in which he could have received those awards but chose not to submit any entries because he was not producing the stories to earn awards. See Kamau Dep. at 30-34.

it is entirely unclear what methodology Kamau used to reach his conclusions beyond conducting his own investigation and determining what he believes occurred. See, e.g., Fate v. Village of Spring Valley, No. 11 Civ. 6838 (JPO), 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013) (precluding police expert from offering testimony about what he believes actually happened or about the credibility of any witness and instead permitting testimony expressly characterized as based on the assumption that certain facts are found to be true). In reaching his conclusions, Kamau testified that he was not assuming anything, but rather basing his opinions on the truthfulness of Desai and others, and relying on his investigative skills to determine what happened. See Kamau Dep. at 59-62. Essentially, Kamau acted as an investigator and a factfinder. His conclusions are not the product of the reliable application of any specific expertise to the facts of this case, and therefore do not satisfy the requirements of Rule 702.

Finally, Kamau's proposed opinions fail to satisfy the helpfulness requirement. If Kamau reached his conclusions based on the express assumption that Desai's version of the facts were accurate, his opinions would not assist the trier of fact in deciding the issues of this case, and therefore are not relevant under Rule 702. Desai alleges that Cassidy pulled the door shut and crushed his hand. Both Cassidy and Bishop deny those allegations, instead contending that Desai was not injured at all in their presence. Therefore, the question for the jury is not whether the amount of force applied was proper, but whether Defendants used any force. In this regard, Desai's claims alleging excessive force are somewhat atypical in that they did not occur during the course of an arrest or other lawful use of force. If his injuries had occurred in such a situation, an expert's

testimony might be helpful to the jury in explaining the range of force that could be used and the propriety of using that level force in a particular set of circumstances. See, e.g., Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908-09 (6th Cir. 2004) (affirming admission of expert testimony about the specific issues of the continuum of force employed by officers generally, the specific training of the defendant officers in the case, and if the witnesses' testimony was credited, the opinion that the officers violated nationally recognized standards governing excessive force). However, an expert opinion that no force was necessary to control a citizen who was merely walking through a door behind a police officer is unnecessary and will not assist the trier of fact.

As to Kamau's opinion that Cassidy exceeded his authority as a law enforcement officer when he allegedly closed the door on Desai's hand, his exact meaning is unclear. Regardless, no expert testimony is necessary for a jury to determine whether a law enforcement officer is authorized to act in the manner alleged. Last, as to Kamau's remaining opinions regarding writing reports and following up on a citizen's complaints, these opinions are not helpful to the jury as they do not relate to any issue the jury must resolve. To the extent Kamau opines that the failure to investigate does not comport with law enforcement standards, assuming he is qualified to opine as to the Florida standards, such an opinion does not relate to any of Desai's claims. Indeed, Desai's claim against Farmer is for negligent training regarding the use of force, which would have occurred prior to any investigation of the alleged incident. See Complaint at 10. Accordingly, even assuming that Kamau is qualified as an expert, his opinions are not helpful to the jury in this case.

For all of the foregoing reasons, the Court concludes that Desai has failed to show that his proposed expert is qualified to provide the proposed opinions, that the opinions are a result of a reliable methodology and that the opinions would be helpful to a jury. Thus, the proposed testimony of Kamau is due to be excluded.

Accordingly, it is

**ORDERED**:

1. Defendants' Motion to Exclude Expert Testimony of Diop Kamau and Memorandum of Law (Doc. No. 34) is **GRANTED**.

2. Defendants' Motion to Strike Expert's Statement (Doc. 39-1) and Memorandum of Law (Doc. No. 41) is **DENIED as moot**.

**DONE AND ORDERED** in Chambers, this 28th day of October, 2014.

*/s/ Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States District Judge

lc16

Copies to:

Counsel of Record